Good morning, ladies and gentlemen. We'll proceed in the order listed. Divide your time as you choose. You need not ask for leave to divide your time between argument in chief and rebuttal or between counsel on the same side. If you want us to divide the time between counsel on the same side, mention it right at the beginning and I'll see if we can do that. We'll have to hold you pretty closely to the times because it's kind of a long calendar and we need to preserve enough of our own concentration for the last few cases. So we'll stick to the times pretty closely. United States v. Everett is submitted. United States v. O'Kelley is submitted. We'll hear United States v. FLOWERS and Kam Sompra. Counsel? HEW FLEISHER Your honor, it's Hew Fleisher here on behalf of Arnold Wesley Flowers. We believe that the overlapping issue in all matters that we have stated is the matter which the court asked us to brief in so far as Blakely v. Washington. We believe that the case applies to the Federal guidelines. We believe that the case applies to the Federal guidelines. We believe that the analysis that we've stated in our letter brief, which states that the Washington law, the kidnapping law that was under consideration in Blakely, had a ten-year maximum as does 1512, the tampering with a witness that Mr. case, the murder for hire case in which he was charged with attempting to hire a hit man to kill a United States district judge, assistant U.S. attorney, and two other persons. He was acquitted on those charges, those very serious charges, and was convicted of the crime that he admitted while he was testifying, that being tampering with a witness and attempting to tamper with a witness. Under 15. Is your case basically that he was acquitted of the charges, but that that's what his upward departure was based on, the charges that he was acquitted on? There's no question about that fact. What do we do about Watts? It seems to say that the court should do exactly what the court did, and Blakely doesn't say that Watts is overruled. Blakely does not say that Watts is overruled, your question is correct, but Blakely does go directly to the point that where a sentencing situation provides for the judge, independently from the jury, to find major facts that go to an upward departure, that that does violate the Sixth Amendment, and we think that that is the essence of the question. I think Justice Scalia was pretty clear in Blakely that you could be sentenced for either the acts that the jury found beyond a reasonable doubt, or the acts that you admitted. And in this case, Flowers apparently admitted during questioning on the witness stand that he was going to threaten, or had planned to threaten, this witness who was going to testify against him in the counterfeit case. So if he admitted that fact, are you saying that he can't be convicted of that, or he can't be sentenced on the basis of that, or do you think that's a lesser-included offense in this case? It was a lesser-included offense, Your Honor. The situation was that he was going to testify against him in the counterfeit case, and that although he admitted to tampering with the witness, there was a controversy about whether there was an actual threat to the witness of bodily harm. We contended that that was not what Mr. Flowers acknowledged in the testimony. The judge determined otherwise, and he gave an eight-level increase on that matter. Now, in addition, though, regardless of the matter of tampering, there was a decision under K-2 of the sentencing timelines to have a five-level increase for the total circumstances. And in that case, the judge specifically determined that, as we cited in our testimony, that he, the judge, was determining under preponderance that he, in fact, did have a plan to kill the judge and the witness and the U.S. attorney, assistant U.S. attorney, and the witnesses. And therefore, based upon that determination, it was a major enhancement of five levels under 5K-2. Counsel, the theory of Watts was that although the jury finds that it's not proved beyond a reasonable doubt that the defendant did a particular, committed a particular crime, nevertheless, that's logically consistent with it being more likely than not that the defendant committed that crime. And the burden of proof for the guidelines is more likely than not, preponderance. I put that together with Watts, and I've got, I think the case was called Agostini. I've got an Agostini problem. We had a case where we held that a subsequent Supreme Court decision undermined the prior Supreme Court decision and implicitly overruled it. The Supreme Court reversed us and said, we'll overrule our own decisions. Thank you very much. If we have a case in point, follow it. Until we expressly overrule it. So my feeling is we're bound by Watts, even if it is implicitly undermined by Blakely. That's what I need you to deal with. Well, I think that it clearly is implicitly undermined, Your Honor, because the fact is Blakely deals with the Sixth Amendment, Your Honor. And the fact of the matter is the majority opinion in Blakely said, in terms of dealing with the Washington case, that the Supreme Court has a law, a kidnapping law, that if, in fact, the judge is making a determination aside and apart from that which was specifically determined by the jury, that, in fact, enhances that sentence, it is violative of the Sixth Amendment. And we think that is an overriding circumstance as it relates to Watts and his progeny. And we think that it clearly relates. And we feel that the analysis between the Washington situation and the federal guidelines is clear. There you had a law that indeed had a 10-year maximum, although under other aspects of the law, the Reform Act, there was a 53-month maximum. Similarly, in this case, there is a 10-year maximum under 1512, but under the federal guidelines, there is a 53-month maximum. And in the case of the Washington case, there was a presumptive 21 to 27-month matter under the statute. Notwithstanding that, the judge ultimately gave Mr. Flowers a 100-month sentence. All of that over and above 27 months was based upon what the judge determined as opposed to that of the jury. And we, therefore, feel that it is squarely under Blakely and the Sixth Amendment as a violation of the rights of Mr. Flowers as it relates to any and all of those upward departures. We think that otherwise, the restitution similarly was, although there is the provision that the government has cited, we think that the restitution that he was required to pay was not shown before the jury and that the judge made that determination as well. Was there no evidence, well, now let's see, the counterfeit charges, are you representing Flowers or? I represented Mr. Flowers in both cases. Now, he pled guilty to the counterfeit. In the bank fraud case, he made the attempt to plead guilty. He's the one who was rejected. One of them had a trial and one of them had pled guilty, right? There was a trial on the murder for hire case, and that went to trial, and I advise that what the result there was. Then there was the bank fraud case, and his co-defendant did enter a plea, and that was accepted. Mr. Flowers attempted to make a plea in the bank fraud case, and that was not accepted by the court. Were there written plea agreements in both of those cases? There was no written agreement in either case. And was there any admission to any amount of loss in either case? There was an admission by Mr. Flowers that he had received $3,000 from a witness in the bank fraud case. So, since he admitted that, you could definitely sentence him for the $3,000 under your theory of Blakely, but not the $15,000, because that's an amount the judge found? Well, I mean, he was found guilty by the jury. We had a trial, and he was found guilty of the $15,000. Right, but did the jury make any finding as to loss? They did not make a specific finding as to loss, no, Your Honor. There was evidence in the case that the witness had received $15,000, and moreover, that she had a specific agreement with the bank in question that she had to pay that back to the bank without any reference to anyone else having a joint responsibility in that regard. So, we argued that that should not have been the case as well. We also had the issue in the bank fraud case of whether or not his plea should have been accepted. We suggested that the evidence document that had been introduced, that had been written by Mr. Flowers prior to his attempt to change his plea, specifically acknowledged the elements of the bank fraud charge that was present. So, we feel that on the basis of that, even though there was a hearing, a suppression hearing, regarding that specific evidence, and Mr. Flowers did, in fact, say that he wished to disavow aspects of that agreement, the fact is the court determined that the agreement was valid and would be admitted and was admitted. So, that was present prior to Mr. Flowers making the attempt to change his plea, and we think that that should have been taken into consideration by the district court for purposes of determining whether he met the standard of admitting, acknowledging the elements of this crime, and therefore, giving him the opportunity for acceptance of responsibility and the other rights that he would have had, had that been accepted. Were you dividing your time? We are, yes, Your Honor. Thank you. May it please the Court, I'm Allison Mendel for the defendant, Sompong Khamsomphu. Obviously, in these arguments, the issue of Blakely is foremost in the Court's minds, and how to react to Blakely in cases involving the U.S. sentencing guidelines. It certainly puts the Court in an awkward position in that Blakely didn't specifically give guidance as to what to do with the sentencing guidelines. Do you have anything that you wish to add to what Mr. Fleischer said about Watts and Agostini? Well, Your Honor, only that it seems to me that the language of Blakely could not be more clear about the Court's disapproval of the practice of sentencing on the basis of facts found by a preponderance of the evidence and facts found by the judge. It seems extremely formalistic, although it's technically, I don't think it's a formalistic approach. It's certainly correct that the Court didn't even address the U.S. sentencing guidelines, but what it addressed is the process. And I think that the sentencing guidelines have no infirmities under Blakely, except the way that you find the facts on which to base the guideline sentence. So that it's not the fact of the sentencing guidelines or the provisions of the sentencing guidelines, it's where the facts come from. And I think Blakely does squarely address that and say you cannot sentence people on the basis of facts found only by a preponderance. And certainly, I mean, there's no dispute that that's what was done in both of these cases, particularly with respect to my client, who, you know, most of the bad evidence was against Mr. Flowers, and the judge seems to have forgotten in some instances that my client was a separate person and talked about things that Flowers did in support of finding things against him. And I don't know about that. She was the conduit of communication between Flowers and the hitman, and she delivered the money. When the judge was talking about whether she could be sentenced on the basis of the threats to the U.S. attorney and the judge, and all that sort of thing. And Kham San Phu's attorney says at the sentencing hearing that, well, she didn't do any of those, she shouldn't be sentenced for this because the jury acquitted her based on a trapment. The judge says, well, Mr. Flowers did X, Y, Z. He doesn't even address what Kham San Phu did, and that is given apparently in the record as support for the sentence of Kham San Phu. What the judge thought she did, I don't know, but what he said was, well, Mr. Flowers did it. There was anything in the context of their conspiracy that they had an agreement before the government entered? I don't know. The fact of the matter is that there is nothing in the trial record supporting the existence of an agreement before the government got involved, before Mr. Kham San Phu. I thought it was uncontradicted that she delivered the money to the person they both thought was the hitman. That is uncontradicted, but that is the behavior that the jury found to have been a trap. The question with Kham San Phu is whether there was evidence that she thought of or participated in some plot to tamper with witnesses prior to the entrance of the informant and the government agent. The government hasn't cited any trial evidence, and I don't know of any trial evidence. There could have been, but there simply is no evidence that there was a conspiracy that preexisted Kimball and so-called Ron. Well, then, wasn't the evidence that she had written down the witness's name and address and took it home, wasn't that circumstantial evidence that could give rise to an inference that that's when the plan began? I don't think the timing is right on that, Your Honor, because the list of people, the four people, was a document written by Flowers. The only thing that Ms. Kham San Phu wrote down or had in her possession was the name and office mailing address of the district judge. And that happened long after the entrance of the government agent and informant into the arrangement. There's no allegation even by the government that there was talk of killing judges prior to the entrance of these other people into the conspiracy. So that all of the things, I mean, what was posited happened that they could have been convicted for absentee entrapment was scaring the witnesses, Lisa and her boyfriend. It wasn't about the judge, the U.S. attorney, that all came up after Mr. Kimball got involved. So the only thing my client had, according to the record, was the address of the judge. Didn't she also give a photograph of, or two photographs of proposed victims to the hit man? And the description or license number of the car? There is evidence of all of that, Your Honor, but none of that predates the entrapment behavior. So if you accept that the jury acquitted her on the basis of entrapment, which is what the record says... Well, under Watts, we accept that she was not, that the government did not persuade the jury beyond a reasonable doubt that she was not entrapped, but the judge nevertheless found by a preponderance of evidence that she was not. And that's the Blakely problem. I mean, these facts are there. It's a Watson-Agostini problem, too. I certainly agree, Your Honor, but none of those facts preexist the entrapment behavior. So if the jury is finding the facts on the entrapment, then it includes all of the facts that Your Honors have pointed out were against my client at the trial. Those are all facts that happened after the existence of the behavior that led to the entrapment. What the jury found to be entrapment, or could have been entrapment, as you say. But the facts that don't exist are facts that show my client did anything before Mr. Kimball and Ron got involved in the whole thing. I mean, the hitman was the government agent, so anything my client gave the hitman was clearly part of what was alleged to be entrapment. And of course, before I'm completely out of time, intimately connected with that problem is the conviction of my client on that charge completely, because of the erroneous jury instruction that was given in response to the jury's question, can we convict of a lesser-included offense? And the problem with that, the judge's answer being only yes, which had it been qualified, would not have been incorrect. But unqualified, it was clearly misleading to the jury, given what the jury was finding and the evidence that the jury had in front of it. The judge should have clarified yes under what circumstances. As it stands, it is impossible to tell whether the jury understood that yes to mean entrapment only goes to what was in the indictment and not to the lesser-included offenses. And if they believe that, that was clearly wrong, and had that instruction been given initially, it would have been clearly wrong. And that's reviewed by this court de novo, and we think therefore her conviction can't stand. I have a question that's not relevant to the issues before us, but these defendants had a small child, a child that was one-year-old at the time of trial, what has happened to the child? Your Honor, I believe the child is still living with my client's relatives. That's the latest information that I have. Thank you, counsel. Is that all right? May it please the Court, I'm Kirby Heller for the government. Let me start with the Blakely point. The government's position is exactly as expressed by Judge Kleinfeld in his questioning. And that is, in light of the fact that Blakely and Apprendi explicitly stated that the federal guidelines were not before them, and in fact, in Apprendi, it went one step further in saying that all we're saying about the guidelines is what we've said before, and said, e.g., U.S. v. Edwards. And what the Supreme Court has said before is that the guidelines are valid in a variety of circumstances, that this court is obligated to follow them. And that holds true even as Judge Kleinfeld said, if there's some question about the precedent based on Blakely. Until the Supreme Court makes that statement that it's overruled, this court is obligated to follow that. What do you make of Justice O'Connor's dissent in Blakely? Because she couldn't say more clearly that the implications of Blakely is to do away with all determinate sentencing schemes, which, of course, includes the sentencing guidelines. Well, of course, that is the dissent, so. I mean, I understand that, but if she's saying that, I mean, I think lower barrel courts should be able to take some guidance from the Supreme Court. But I don't know how far the Ninth Circuit went in that case. But here, it just seems that the argument for an implicit overruling of the prior law on sentencing guidelines is very strong. In light of really the difficulty in interpreting what Blakely means for the guidelines, especially in terms of both what the majority said and the differences between the Washington statute and the federal guidelines, we don't believe that certainly the dissent and the analysis in the dissent is enough to make whatever is implicit there specifically explicit enough for this court to rely on that. Well, what are the differences between the Washington statute and the federal sentencing guidelines? Well, I think there are two that are of significance. Two sets of legislatively determined maxima are different from ours. And the one that is the true statutory maximum is really a very general statute, which says a Class A felony has this many years, a Class B says this many years. And it doesn't say anything about the elements of the crime. It's only the other statute, which has the specific elements of the crime, and sets up this presumption. It's a presumptive range that's presented to the jury. Now, in our system, of course, the code, which has the statutory maximum, sets out the elements of the crime. And in that way, I believe that our congressionally passed criminal code is more similar to that intermediate statute in the Washington system, in that it has one of the essential elements of the crime and gives notice to a defendant, of course, of what that is and what the statutory maximum is. The other difference, of course, is that our guidelines are not legislatively passed. They were determined by an independent, sort of unique, very unique commission, but that, in fact, is placed in the judiciary. And all the writings about the commission, starting with Mistretta, talk about how the guidelines were really meant to formalize what judges have always done. And to rely on the factors that judges have always used in sentencing. One case I think that's very useful in thinking about how the guidelines work, by analogy, is Harris, which the Supreme Court decided just two years ago, in which it upheld mandatory minimum after apprendee. And it talks a lot about the differences between a statutory maximum, which in that case, being a 924C, was life, and what a court could do without a jury finding below that. So, in that case, you know, the jury never found brandishing, which certainly sets a sentence within the range below the maximum. The judge was allowed to find that by a preponderance. And the court goes on a great length about the difference between the essential elements of the crime and the sentencing factors. So, as of two years ago, post-apprendee, that whole notion of sentencing factors, was alive and well and used in the Supreme Court's jurisprudence in talking about this. And a lot of the language in Harris, I'm sorry, in Harris, can be directly translated to the guidelines. They operate in a similar way, except that they're discretionary. They operate even more like what judges did than a mandatory minimum, which, of course, is by Congress. The other case, although it was pre-apprendee, but again, it is precedent, besides Watts, that's very important in this case, is Edwards, which is a Sixth Amendment case. And in that case, the court, of course, said that even if one assumes that the jury verdict reflected a conspiracy involving only cocaine, the judge was free to look at facts that weren't implicated in the jury verdict. And it made that very important statement about if the guidelines exceeded the statutory maximum, of course, that would be a constitutional problem. And that's what happened later on in apprendee, or similar in apprendee. But so long as it's under the maximum, that's okay. That's what trumps the guidelines. Two other things I'd just like to say briefly about Blakely. One is, if this court were to find that the guidelines were unconstitutional, it's our position that the unconstitutional aspects can't be severed from the remaining of the guidelines system. That it works as an integrated whole, that's how Congress and the Commission intended it, and so what would happen if this court were to find that Blakely made the guidelines unconstitutional, we believe would be a remand to the district court to sentence just on the basis of the statutory maximum, using the guidelines as a guide. So what you would do then is you'd vacate the sentences, because the guidelines are unconstitutional, remand for resentencing, and it would be wide open for the crimes of conviction under the statutory maximums. Well, we would urge that the guidelines still be used as a guide, and in fact there are, I don't have the specific section, but in, I believe it's Title 18, and I can come up with a section, the sentencing statutes talk about what courts should do when there is no guideline provision, and it says try to find the nearest guideline. So there is congressional directives to use the guidelines as a guide, even when there's no guideline in place. It actually, the first theory as to why the guidelines are distinguishable from the Washington statute, or actually it was the second theory that you talked about, was the argument that it was simply a codification of the existing factors that courts use in their discretion in sentencing. So if we were to find the guidelines unconstitutional, and your position is they wouldn't be severed, we'd just be back, we would just go back to that situation where the judges could sentence someone within the statutory maximum in their discretion, and there would be, since the guidelines wouldn't be applicable, there would be nothing in the guidelines that would require us to even follow finding the nearest guideline. Well, the statute, the statute that, again by analogy, says that when there is no guideline, use something else as a guide, I think can be applied in this situation, which is use them as a guide. But the guidelines themselves obviously would not be binding. Is it correct that what's really at stake here is the departure upward for conspiring to kill a judge and an AUSA and a witness in the face of a jury verdict that seems to establish entrapment for that particular conduct? Certainly if Lakeley were to apply to the guidelines, that would be directly implicated, but the worst case scenario, if Lakeley applied to all aspects of the guidelines, that every sentencing enhancement would also be unconstitutional. Again, that would be the worst case scenario. One other factor I want to mention about the adjustments as well as the departures. Upward ones, yes. But there wouldn't be any enhancements. The guidelines are unconstitutional and courts are not supposed to follow them. They're just supposed to sentence within their discretion. They're not enhancing sentences because there's nothing to enhance from. There's no base offense level. There's just the statute that says for armed robbery, you can sentence up to 20 years or whatever. That's the statute. There's no base offense level calculation. Right? Well, that would be our position that once you find, if you find that Lakeley applies to the guidelines, then the whole system really doesn't hang together. But the unconstitutional part of it literally would be only the facts that increase the sentence. So you could be left, although we would argue that this doesn't make sense at all, with just a base offense level and anything that reduces the sentence, not having to go to the jury. And that's why I'm making this severability argument, that that system just doesn't work and is not what Congress intended and the Commission intended when it came up with the system. And that's the factor that one would look at to see whether it's severable or not. And you can save it. And our position is you can't save the guidelines if you find that important aspect of it unconstitutional. Just the one final point about Blakeley, again, if this Court were to find that Blakeley applied to the guidelines, the defendants did not raise that challenge below. So that claim of error would be reviewed under the plain error standard. And although it would be error, because it's still pending on appeal, we would argue that it's not plain, given the uncertainty of what Blakeley stands for, given the existing Supreme Court precedent that says what the Court did here was fine, and this Court's precedent that the guidelines are constitutional,  and we can exercise our discretion to consider the issue in light of the change of the law by the Supreme Court. Certainly, and that would go to the first prong of the plain error test, is there error, and if you were to find that. No, no, aside from the plain error test, when there's a change in the law by the Supreme Court, and it hasn't been raised below, we can exercise our discretion to consider it or not. Well, Your Honor, when there's a change of the law, but it hasn't been raised below, this Court can consider it, but it judges it under the plain error standard. I don't think that's right, but we don't have to argue about that. If I could just direct Your Honor's attention to cotton, that's exactly what cotton held. If I could direct your attention to several different cases that hold something different in the Ninth Circuit. So let's just drop that one. If there are no other questions on Blakely, I'll go to some of the aspects of the case. Actually, just one other Blakely point as to restitution. It's our position that Blakely doesn't apply to restitution at all. There are some cases post-Apprendi that said Apprendi didn't apply to restitution, because there's no maximum. So there's not a maximum above which a judge is going by judge-decided facts. And I can give you those sites if you wish. They're not from the Ninth Circuit, but there are two. There's a Third Circuit case and a Seventh Circuit case that talk about restitution not being... But it is interesting, because I would tend to agree to that, except that restitution amounts are tied into the amount of loss, which is tied in, again, to the base defense level. It's a very sort of sui generis kind of aspect of punishment without a maximum. Let me turn to some of the... The Third Circuit actually said restitution is not punishment, and the Seventh Circuit said that restitution is punishment. And I looked at the Ninth Circuit, and I didn't find a clear statement on what the Ninth Circuit views, how the Ninth Circuit views restitution. I don't know if we've ever thought about it. Certainly, if it's not punishment, then it's really not a big issue. Let me turn a little bit to the entrapment issue and the sufficiency of the evidence and the jury instruction. First of all, there was evidence of predisposition before the government ever got involved in this case. As to Kam Sanfu, she wrote down the name... Or not the name, the address of the witness as she testified at the preliminary hearing on the bank fraud case against Flowers and Kam Sanfu. That was before the government was involved, and it's our position that that alone reflects some disposition to be involved in this plot to tamper with the witness. It's also not the case, as a legal matter, that one can't rely on conduct that takes place after the government is involved to judge predisposition before the government is involved. So that although it's true for entrapment that we have to establish that there was predisposition before the government was involved, you're not limited to looking at that limited time frame. You can look after that. And in this case, I believe there's plenty of evidence to show of Kam Sanfu's predisposition. First of all, she had literally or virtually no contact with Kimball except for some phone conversations. She testified somewhat incredibly, I believe the district court found, that Kimball threatened to kill her if she didn't go meet with Ron. But most of her testimony is that she did these various things that she did because Flowers asked her to. So that's certainly not inducement by the government. And as to the piece of paper with the judge's name and phone number, that was found, of course, after she was arrested in a search. We really don't know when she wrote that down, but certainly one could infer that she got that information to Flowers early on because he used that to make his list to give to Kimball who gave it to the undercover. So there was certainly evidence that she was aware of that aspect of the plot as well. She was also involved, aside from her meeting with the undercover, where she very much was up front in giving the information and providing the picture and coming up with the plot of making them seem like they took a vacation. She also facilitated the phone calls. She listened to many of the phone calls. She was aware that they were talking about killing a judge and an assistant U.S. attorney as well, although everyone made great efforts to try to deliberately keep her out of it. But she was aware of those going on and still facilitated the plot. As to the instruction on entrapment, the defendants did contest the judge's response to the jury question, does entrapment apply to the lesser included offense? If we find them not guilty as a result of entrapment on the charge of offense, can we still convict them on the lesser included offense? The defendants wanted the judge to say no. The government argued yes, and the judge decided that it should be yes because they could have been entrapped into killing, trying to kill the witnesses and the judge and the assistant, but they could have easily not been entrapped of the lesser plot to tamper with the witness. But the defendants did not ask the judge to charge that entrapment specifically applied to the lesser included offense as well. So that specific wording claim was not made and would be reviewed for plain error. But it's our position that the jury was aware that they had just been told that entrapment applied to each of the offenses and their question came a short time later. So they were aware that entrapment was a defense to all of the charges. If there are no other questions, I will press on our brief. Thank you, Counsel. Unless my colleagues have more questions for the appellants, I suppose we've exhausted the time. Next, United States v. Lewis.
judges: Hall, Kleinfeld, Wardlaw